<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JUSTER ACQUISITION CO., LLC,** | : | |
| | : | |
| **Plaintiff,** | : | Civil Action No.  12-3427 (JLL) |
| | : | |
| **v.** | : | |
| | : | |
| **NORTH HUDSON SEWERAGE** | : | OPINION |
| **AUTHORITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**HAMMER, United States Magistrate Judge**

**I.  INTRODUCTION**

This matter comes before the Court by way of defendant North Hudson Sewerage Authority's ("defendant" or "NHSA") motion for a protective order regarding the sixty-seven (67) word searches of electronically stored information ("ESI") demanded by plaintiff Juster Acquisition Co., LLC ("plaintiff" or "Juster").  <u>See</u> Nov. 28, 2012, Motion for Discovery Fees, ECF No. 14.  Should the Court deny defendant's motion for a protective order, NHSA seeks, in the alternative, an order for fee-shifting on plaintiff's requested electronic discovery.  If the Court determines that fee-shifting is in fact warranted, plaintiff submits that the Court must also require defendant to reimburse it for the electronic discovery costs it has incurred in the course of this litigation.  For the reasons set forth herein, the Court denies with prejudice defendant's motion for a protective order and request for discovery fees, and as such, plaintiff's request for discovery fees is rendered moot.

1

II.     FACTUAL BACKGROUND

Juster filed a four-count Complaint on June 6, 2012, against NHSA to recover compensatory damages, costs and pre-judgment interest, attorneys' fees and costs, and such other relief as the Court deems equitable and just.  (Compl., June 6, 2012, ECF No. 1).  Juster is a New York limited liability company that invests in various business opportunities such as complex financing transactions.  (Id. ¶ 1, ECF No. 1).  NHSA is a political subdivision and public body politic, formed pursuant to the Sewerage Authorities Law of New Jersey, N.J.S.A. 40:14A-1 et seq., for the purpose of acquiring, constructing, maintaining, and operating facilities for collection, treatment, and disposal of sewage.  (Id. ¶ 2).  The parties began their business relationship when NHSA sought to refinance and recapitalize the bulk of its primary debt obligations.  (Id. ¶ 6).  NHSA determined it would need help from a private party who possessed the requisite knowledge to execute the transaction, and Juster responded to NHSA's Request for Qualifications.  (Id.).  Juster alleges that the two parties negotiated and executed a term sheet ("Term Sheet"), which contained a binding Exclusivity Provision stating that NHSA would "neither solicit other offers nor disclose any of the terms herein for a period of 18 months from the date of execution of this Term Sheet."  (Id. ¶ 7).  NHSA denies the existence of this Exclusivity Provision, or that the Term Sheet was ever executed.  (Answer ¶ 7, July 13, 2012, ECF No. 7).

Pursuant to the execution of the Term Sheet, Juster alleges that it devoted substantial time and effort developing and implementing a plan for NHSA to refinance its primary debt obligations ("Juster Work Product").  (Compl. ¶ 10, ECF No. 1).  NHSA, on the other hand,

alleges that Juster undertook such action at its own expense in the hope of becoming NHSA's financing agent.  (Answer ¶ 10, ECF No. 7).  Accordingly, NHSA denies that "it ever agreed to or has any obligation to reimburse Juster."  (Id.).  Juster alleges that on January 20, 2012, NHSA instructed Juster's financial advisors to put a halt to the transaction.  (Compl. ¶ 11, ECF No. 1). It contends that NHSA indefinitely suspended the closing, and in the months following the suspension, NHSA refused to negotiate in good faith with Juster.  (Id. ¶ 12).  On or about May 24, 2012, NHSA took the Juster Work Product and proceeded to close the contemplated transaction without Juster, in violation of the Exclusivity Provision.  (Id. ¶ 15).  NHSA denies these allegations, but admits that it proceeded to closing on May 24, 2012, using a Certificates of Participation ("COP") structure after determining that such a transaction structure would better meet its requirements for the refinancing.  (Answer ¶ 15, ECF No. 7).  NHSA alleges that Juster had the opportunity to participate but declined to do so.  (Id.).  Juster claims that NHSA's actions have damaged Juster in an amount not less than $41 million.  (Compl. ¶ 16, ECF No. 1).

## III.   PROCEDURAL HISTORY

As set forth above, plaintiff filed a four-count Complaint against NHSA on June 6, 2012 (ECF No. 1), and defendant filed its Answer on July 13, 2012 (ECF No. 7).  The Court ordered that Fed. R. Civ. P. 26 disclosures were to be exchanged on or before October 12, 2012, with fact discovery to remain open through May 22, 2013.  (Pretr. Sched. Order ¶¶ 1–2, Oct. 5, 2012, ECF No. 10).  The parties served written discovery, and agreed that all responses would be served on or before November 5, 2012, and any privilege logs would be served on or before November 12, 2012.  (Id. ¶ 3).  Plaintiff's counsel wrote to the Court on November 5, 2012, with intentions of requesting a revised scheduling order.  (ECF No. 12).  After a telephone status conference, the

Court issued an Order extending the deadline for all responses to written discovery to be served on or before December 10, 2012, and any responsive privilege log to be served on or before December 17, 2012.  (Order, Nov. 13, 2012, ECF No. 13).

Plaintiff issued its First Request for the Production of Documents on August 15, 2012, which included forty-nine (49) requests for documents related to defendant's answer and affirmative defenses and other relevant documents, as well as an additional list of sixty-seven (67) proposed search terms.  (ECF No. 14-1).  On November 28, 2012, defendant filed a letter requesting that the Court enter a protective order regarding the sixty-seven (67) electronic word searches demanded by Juster.  (ECF No. 14).  NHSA argues that it is entitled to a protective order because it has already produced 8000 pages of responsive documents and the additional search terms are, in its view, quite broad and vague.  (Id.).  Alternatively, should the Court deny its request for a protective order and require these searches, NHSA seeks an order that requires Juster to pay the costs associated with conducting these searches.  (Id.).

In response, Juster filed a letter in opposition to defendant's application for fee-shifting on electronic discovery.  (Pl.'s Letter, Nov. 28, 2012, ECF No. 15).  Juster maintains that it seeks reasonable discovery that is tailored to the breach issues in this case and is limited to the timeframe of 2011 and 2012.  (Id. at 1).  Therefore, Juster asserts that NHSA should conduct the relevant searches, including the searches involving the sixty-seven (67) proposed terms, and bear the cost of doing so.  (Id. at 1).  However, if the Court decides to shift the cost of defendant's discovery to plaintiff, Juster requests that the Court order NHSA to reimburse Juster for the electronic discovery costs it has incurred already.  (Id. at 10).

4

**IV.   DISCUSSION**

Fed. R. Civ. P. 26(c)(1) provides, in relevant part:

> A party or any person from whom discovery is sought may move
> for a protective order in the court where the action is pending – or
> as an alternative on matters relating to a deposition, in the court for
> the district where the deposition will be taken.  The motion must
> include a certification that the movant has in good faith conferred
> or attempted to confer with other affected parties in an effort to
> resolve the dispute without court action.  The court may, for good
> cause, issue an order to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense. . . .

Here, defendant moves for a protective order with regard to the additional sixty-seven

(67) word searches requested by plaintiff.  However, defendant has failed to provide any law or

analysis in support of its request for a protective order.  That is, defendant presents no

compelling factual basis or sufficient legal background to support its motion for a protective

order.  It is true, as defendant argues, that several of the sixty-seven terms appear, at first blush,

to be somewhat broad.  See, e.g., Nov. 28, 2012, Motion for Discovery Fees, Exh. 1 (list of

proposed search terms, which include "SEC," "fee," "debt," and "Tax!").  However, NHSA

points out that it has complied with Juster's request to search approximately one hundred terms,

including "indicative," "development," "security," "fee," and "finance!"  Nov. 28, 2012, Letter,

ECF No. 15, Exh. B (exclamation point in original).  Moreover, given the nature of the dispute,

the Court cannot find that the search terms are unreasonable.  In addition, NHSA fails to show

how it would be unreasonably cumulative or duplicative to perform the requested search

discovery.  Therefore, the Court cannot conclude that there is good cause for a protective order.

Further, defendant has failed to comply with the plain language of Fed. R. Civ. P.

26(c)(1), which requires the inclusion of a certification "that the movant has in good faith

conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." In the absence of such a certification from defendant, the Court cannot grant its request for a protective order. Therefore, because NHSA has failed to carry its burden of demonstrating good cause, the Court denies defendant's request for a protective order.

Next, defendant argues that Juster should bear the cost of the requested ESI because the scope of information sought is unduly burdensome and unreasonable. Defense counsel alleges that this matter has been one of the most document-intensive cases that the firm has ever encountered, and that NHSA has already provided Juster with over 8000 pages in hard-copy documents in response to Juster's other discovery requests. (Def.'s Letter, ECF No. 14). Therefore, NHSA submits that the Court should require Juster to pay for its costs in retaining an outside vendor to provide the technical support needed to respond to Juster's ESI discovery requests. (Id.). However, for the reasons set forth below, the Court denies defendant's motion for discovery fees.

There is a general presumption that "the responding party must bear the expense of complying with discovery requests." Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 283 (S.D.N.Y. 2003). Therefore, the responding party "has the burden of proof on a motion for cost-shifting." Id. To that end, cost-shifting should only be considered when electronic discovery imposes an undue burden or expense on the responding party. Id. at 287. As a preliminary matter, "[c]ost-shifting is potentially appropriate only when *inaccessible* data is sought." Id. at 284; see Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (Zubulake II) ("[W]hether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible* or *inaccessible* format (a distinction that corresponds closely to

the expense of production)."). "[I]n the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible." <u>Zubulake II</u>, 217 F.R.D. at 318. Specifically, active, online data, near-line data, and offline storage/archives are typically identified as "accessible" electronic data. <u>Id.</u> at 318–19. Backup tapes and erased, fragmented, or damaged data are typically identified as "inaccessible" electronic data. <u>Id.</u> at 319–320. Thus, electronic data that is stored in "a readily usable format" is deemed "accessible" whereas electronic data that is not readily usable (i.e., data that must be restored, de-fragmented, or reconstructed) is considered "inaccessible." <u>Id.</u> at 321.

Here, NHSA, as the responding party, has failed to satisfy its burden of showing that the ESI sought by Juster is inaccessible. NHSA has not asserted that any of the requested data is located on backup tapes. (Def.'s Mot., ECF No. 14); (see Pl.'s Opp'n Mem. at 6, ECF No. 15); cf. <u>Universal Del., Inc., v. Comdata Corp.</u>, 2010 U.S. Dist. LEXIS 32158, at *22 (E.D. Pa. Mar. 31, 2010) (finding that "[s]ome cost-shifting is appropriate because the data at issue in this case is kept in an inaccessible format, i.e., back-up tapes"). It has not asserted that any of the requested data is erased, fragmented, or damaged in any way. (See ECF No. 14). To the contrary, by asserting that it has hired an outside vendor to perform the word searches, NHSA has acknowledged that the ESI is accessible. It has also failed to show that the ESI sought by Juster imposes an "undue" burden or expense. Rather, the Court finds that NHSA seeks merely to avoid the cost associated with what it presumes to be duplicative and expensive word searches. As a result, the Court cannot find that the ESI requested by Juster falls into either category of "inaccessible" electronic data. Because such data is in fact accessible to NHSA, defendant must bear the attendant discovery costs. Even though defendant has failed its threshold requirement of

demonstrating that Juster seeks "inaccessible" ESI, this Court will nonetheless provide additional

reasons for denying NHSA's fee-shifting request.

   The <u>Zubulake</u> Court set forth a seven-factor test to determine whether discovery costs

should be shifted, which are weighted more-or-less in the following order:

> 1) the extent to which the request is specifically tailored to
> discover relevant information;
> 2) the availability of such information from other sources;
> 3) the total cost of production, compared to the amount in
> controversy;
> 4) the total cost of production;
> 5) the relative ability of each party to control costs and its incentive
> to do so;
> 6) the importance of the issues at stake in the litigation; and
> 7) the relative benefits to the parties of obtaining the information.
> 216 F.R.D. at 284.

The Third Circuit has adopted that criteria for when cost-shifting might be appropriate in

electronic discovery.  <u>See</u> <u>Wachtel v. Guardian Life Ins.</u>, 2007 U.S. Dist. LEXIS 43842 (D.N.J.

June 18, 2007) (following <u>Zubulake</u>); <u>see also</u> <u>Boeynaems v. La Fitness Int'l</u>, 285 F.R.D. 331,

336 (E.D. Pa. 2012) (stating that <u>Zubulake</u> is undoubtedly the leading opinion in regard to

standards for requiring that the requesting party share discovery costs).

   Applying the <u>Zubulake</u> factors in light of all of the circumstances, the Court does not find

that fee-shifting is warranted.  First, the Court agrees with Juster that the ESI requests are

sufficiently tailored to discover relevant information regarding communications between the

various actors who took part in the transaction at issue.  (Pl.'s Opp'n Mem. at 7, ECF No. 15).

The requested searches are reasonable and restricted to the time period of 2011 to 2012, which is

the relevant time frame during which the parties were in negotiation.  Further, it is important to

note that after Juster provided NHSA with the proposed discovery request, NHSA agreed in

writing that each party would bear its own costs in connection with producing discovery.  (Id. at

2; ECF No. 15, Exh. A ¶ 4).  Accordingly, the first factor is in favor of Juster.

Second, until NHSA actually runs the requested searches, neither NHSA nor anybody

else can know whether the ESI word searches will turn up information that would have been

available from any other source.  While it is true that the Court, on motion or on its own, must

limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2), NHSA fails to

show how it would be unreasonably cumulative or duplicative to perform the requested ESI

discovery.  As such, the Court is not compelled to impose such a limitation on plaintiff's

requested ESI discovery.  Further, it is irrelevant that NHSA has already turned over 8000 pages

of documents to Juster because "production of information in 'hard copy' documentary form

does not preclude a party from receiving that same information in computerized/electronic form."

Anti-Monopoly, Inc. v. Hasbro, Inc., 1995 U.S. Dist. LEXIS 16355, at *2 (S.D.N.Y. Nov. 3,

1995).  Therefore, the second Zubulake factor also weighs in favor of Juster.

Factors three through five concern the financial aspect of the discovery request.  The

amount in controversy here is well in excess of the amount that NHSA estimates it will cost to

perform the requested ESI discovery.  NHSA alleges that it will cost between $6000 to $16,000

to process the word searches and eliminate duplicates.  (Def.'s Letter, ECF No. 14).  The amount

that Juster alleges it is owed is not less than $41 million.  (Answer ¶ 15, ECF No. 7).  Further,

Juster alleges that "NHSA's resources dwarf the estimated cost of the requested discovery . . . .

The estimated discovery costs at issue here are negligible in comparison to the NHSA's

resources." (Pl.'s Opp'n Letter at 9, ECF No. 15). Given the amount of damages at stake in this litigation, and NHSA's ability to absorb the cost of the requested ESI discovery, the projected discovery costs are not so substantial as to support a conclusion that fee-shifting is warranted. See, e.g., Zubulake, 216 F.R.D. at 287–88 ("[T]he total cost of restoring the remaining seventy-two tapes extrapolates to $165,954.67 . . . the cost of restoration is surely not 'significantly disproportionate' to the projected value of this case. This factor weighs against cost-shifting."). As a result, Zubulake factors three through five weigh in favor of Juster.

Factors six and seven are less critical to the analysis of whether cost-shifting is appropriate in electronic discovery. See Zubulake, 216 F.R.D. at 284 (listing the factors for determination of fee-shifting in descending order of importance). As such, factors six and seven, standing alone, are generally insufficient to support a party's motion for fee-shifting. Here, factors six and seven do not weigh in favor of plaintiff, nor do they necessarily weigh in favor of defendant. The sixth factor examines the actual allegations involved in the litigation. It is usually invoked where the litigation presents "a particularly novel issue." Zubulake, 216 F.R.D. at 289. The litigation here is a private contractual dispute between fairly sophisticated parties. The issues at stake include the nature of the parties' negotiations and what one party could have reasonably understood the other party to have meant during their discussions. The outcome of this litigation does not have great potential for broad public impact because it does not implicate any widely-applicable public policy. See Zubulake II, 217 F.R.D. at 321 (noting that cases involving "toxic tort class actions, environmental actions, so-called 'impact' or social reform litigation, cases involving criminal conduct, or cases implicating important legal or constitutional questions" are of the ilk that may have broad public impact). Therefore, the sixth factor is not

10

dispositive to the instant matter.  See id. at 321 (noting that the sixth factor "will only rarely come into play").  The seventh factor concerns the potential benefits to either party that may result from the ESI discovery.  However, any such benefits cannot be known until the word searches are performed.  The last factor is thus also neutral.

Having established that the Zubulake factors, on balance, weigh in favor of plaintiff, this Court finds that principles of fundamental fairness further support its denial of defendant's fee-shifting request.  See Boeynaems, 285 F.R.D. at 335.  Here, both parties have requested ESI discovery from the other party, and both parties agreed to pay their own costs in producing discovery.  (See Exh. A to ECF No. 15).  The amount of discovery requested by each party is comparable – Juster requested sixty-seven (67) word searches in addition to forty-nine (49) specific documents, and NHSA requested the results from one hundred (100) search terms.  This is not a situation where one party is unduly burdened by the opposing party's discovery requests, which may implicate fee-shifting.  See Major Tours, Inc. v. Colorel, 2009 U.S. Dist. LEXIS 97554, at *11, 19 (determining that plaintiffs and defendants should share the cost of searching defendants' backup tapes, given that thousands of relevant documents were e-mails that had been produced already to plaintiffs).  Therefore, because defendant has failed to demonstrate that it has been unduly burdened by plaintiff's ESI request or that plaintiff's request is eminently unreasonable, it fails to meet its burden of showing why cost-shifting is appropriate.

Because the Court finds that defendant is not entitled to a fee-shifting order, plaintiff's subsequent request that NHSA should reimburse it for the electronic discovery it has incurred during the course of this litigation is rendered moot.  Therefore, the Court declines to analyze the merits of plaintiff's request for fee-shifting.

**V.    CONCLUSION**

For the reasons above, the Court denies defendant's motion for a protective order, as well as its alternative request for fee-shifting.  The Court also denies as moot plaintiff's request for fee-shifting.  An Order consistent with this Opinion will follow.

s/ <i>Michael A. Hammer</i>
United States Magistrate Judge

Date: February 11, 2013