SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
(973) 643-7000
*Attorneys for Plaintiff Juster Acquisition Co., LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| | : Civil Action No. 12-cv-3427 (JLL)(MAH) |
| JUSTER ACQUISITION CO., LLC, | : Hon. Jose L. Linares, U.S.D.J. |
| | Hon. Michael A. Hammer, U.S.M.J. |
| Plaintiff, | : |
| | Return Date: December 16, 2013 |
| v. | : |
| | Oral Argument Requested |
| NORTH HUDSON SEWERAGE | : |
| AUTHORITY, | (*Document Electronically Filed*) |
| | : |
| Defendant. | PLAINTIFF'S L. CIV. R. 56.1 STATEMENT |
| | : OF UNDISPUTED MATERIAL FACTS |

Plaintiff Juster Acquisition Co., LLC. ("Juster") respectfully submits this Statement of Undisputed Material Facts pursuant to L. Civ. R. 56.1 in support of its motion for summary judgment against defendant North Hudson Sewerage Authority (the "NHSA" or "Authority").

1. In July of 2011, the NHSA issued a Request for Qualifications to restructure and refinance the NHSA's senior debt from a 2003 leveraged lease financing. Epstein Decl. Ex. 3 at 92:20-93:3; Ex. 5; Ex. 6 at 76:12-77:19; Ex. 10 at No. 19.

2. On August 4, 2011, Juster provided a response to the NHSA's Request for Qualifications. Epstein Decl. Ex. 7.

3. The NHSA selected Juster pursuant to the Request for Qualifications. The NHSA found Juster and the professionals retained by Juster to be qualified for the restructuring and refinancing of the NHSA's senior debt from the 2003 leveraged lease financing. Epstein Decl. Ex. 8; Ex. 6 at 86:8-87:15, 89:7-90:4; Ex. 3 at 108-109; Ex. 9.

4. The Special Financial Advisor to the NHSA for the restructuring and refinancing of the NHSA's senior debt from the 2003 leveraged lease financing was Mr. Michael Geffrard of the LIATI Group, LLC. Epstein Decl. Ex. 3 at 100:14-22; Ex. 4 at 77:20-78:5; Ex. 10 at No. 33. Mr. Geffrard was the point person for the negotiation of a Term Sheet between the NHSA and Juster. *Id.* Ex. 3 at 108:10-110:3, 301-305; Ex. 6 at 92:15-22.

5. The NHSA authorized its Executive Director, Fred Pocci, and its general counsel, Frank Leanza, to negotiate the Term Sheet between the NHSA and Juster. Epstein Decl. Ex. 3 at 108:10-110:3, 304:8-13; Ex. 6 at 91:7-92:22, 100:1-10; Ex. 9.

6. The parties executed a Term Sheet. Epstein Decl. Ex. 1.

7. The Term Sheet contained a provision entitled "Exclusivity" (the "Exclusivity Provision"). Epstein Decl. Ex. 1 at p. 11.

8. The Exclusivity Provision provides:

> The Authority agrees to work exclusively with Juster on the restructuring and refinancing of the Authority's 2003 leveraged

2

>lease and will neither solicit other offers nor disclose any of the terms herein for a period of 18 months from the date of execution of this Term Sheet.  The parties agree to work diligently and in good faith to conclude this financing as quickly as possible.  This grant of exclusivity shall not in any way impede the Authority from engaging in other capital raising activities that are part of its ongoing capital investment program, nor from doing any other activities necessary for its efficient and cost effective operations.  This period of exclusivity will be deemed to expire if Juster unilaterally and unreasonably withdraws from pursuing this transaction with the Authority.  By way of example, the Purchase Amount, BRP and use of Issuer bond proceeds described herein were determined based upon certain assumptions regarding yield on the Issuer's bonds.  If market yields at the time the transaction is priced are higher, the closing may be delayed or the parties may negotiate changes without terminating exclusivity.

Epstein Decl. Ex. 1 at p. 11.

9. The Term Sheet further provides that it is "not contractual in nature . . ." and shall not "create or give rise to any legally binding obligation to lease, purchase or sell, or any other legally binding obligation other than as described under "Exclusivity" above."  Epstein Decl. Ex. 1 at p. 12.

10. In the fall of 2011 and through January of 2012, Juster and its professionals devoted substantial time and effort to developing and implementing the restructuring and refinancing of the Authority's senior debt.  Epstein Decl. Ex. 27 at 37:1-39:23; Ex. 3 at 170:4-172:1; Ex. 6 at 117:9-12, 132:1-15, 139:15-140:11; Ex. 33.

11. Juster proposed three primary transaction structures to accomplish the refinancing. Epstein Decl. Ex. 2, ¶¶ 35-37. Juster proposed a "144a" transaction, which refers to a 1990 administrative rule issued by the Securities & Exchange Commission ("SEC") allowing, under certain circumstances, for the trading of certain securities among institutional investors without registering the trade with the SEC. *Id.* Ex. 2, ¶ 35. Juster also proposed a "3(a)(2)" transaction, which also provides for exemption from SEC registration for securities issued by, among other things, public instrumentalities pursuant to Section 3(a)(2) of the Securities Act of 1933. *See* 15 USC § 77c. *Id.* Ex. 2, ¶ 36. Juster also proposed a Certificates of Participation ("COPs") structure to the NHSA in or about December 2011. *Id.* Ex. 2, ¶¶ 35-37; Ex. 24; Ex. 26 at 91-92. A COPs transaction is a type of financing where an investor purchases a share of lease revenues rather than a bond secured by those revenues. *Id.* Ex. 2, ¶ 37. However, the NHSA informed Juster that the NHSA did not want to proceed with a COPs transaction. *Id*. Ex. 6 at 102:10-107:9; Ex. 24; Ex. 26 at 91-92; Ex. 27 at 51:21-53:3; Ex. 29.

12. Juster and its professionals provided to the NHSA drafts of the Preliminary Official Statement ("POS"), Head Lease, Master Lease Agreement, and an Indenture of Trust and Security Agreement. Epstein Cert. Ex. 6 at 139:18-140:2; Ex. 33. Juster and its professional worked with the NHSA to obtain investment grade ratings from Standard & Poor's and Fitch. *Id*. Ex. 3 at 170:4-16;

Ex. 6 at 41:19-25. Juster and its professionals coordinated a closing of the refinancing for late January of 2012. *Id.* Ex. 6 at 32:12-15; Ex. 27 at 40:22-41:7.

13. Believing the NHSA intended to proceed in good faith in accordance with the parties' agreement, Juster proceeded towards a closing in late January 2012. Epstein Decl. Ex. 6 at 32:12-15; Ex. 27 at 40:22-41:7. Juster never unilaterally and unreasonably withdrew from the transaction. *Id.* Ex. 6 at 101:11-16.

14. By mid-January 2012, Juster and its team were nearing completion of months of hard work and were finalizing the Preliminary Official Statement with plans to mail it on January 20, 2012. Epstein Decl. Ex. 6 at 139:18-140:11; Ex. 32. On January 20, Orrick circulated revised drafts of the lease documents. *Id.* Ex. 6 at 280:19-281:11; Ex. 33. Then, on January 20, the NHSA suspended the closing indefinitely. *Id.* Ex. 3 at 207:23-208:2; Ex. 6 at 140; Ex. 10 at No. 12.

15. Unbeknownst to Juster, the NHSA decided to pursue a COPs deal with NW Financial – and not Juster – in February 2012. Epstein Decl. Ex. 38 at 151-152, 160-168; Ex. 39; Ex. 40 at 178:21-180:19; Ex. 41. The NHSA's bond counsel, Jack Kraft, Esq., testified that in February 2012, the Authority decided to proceed with a COPs transaction without Juster. Epstein Decl. Ex. 38 at 151-52, 160-68. On February 24, 2012, Mr. Pocci called Dennis Enright of NW Financial and advised that "we're all on the same page now, COPs all the way . . . ." *Id.* Ex.

5

39; Ex. 40 at 178:21-180:19.  A few days later, on February 27, 2012, Mr. Enright e-mailed Mr. Pocci and Richard Wolff, the NHSA's Chairman, a proposed COPs timeline, which provided for a closing on May 24, 2012, the same date that the NHSA closed the COPs deal with NW Financial.  *Id.* Ex. 41.

16. On March 7, 2012, the NHSA held a COPs "kickoff" meeting at its offices in Hoboken; Juster was not invited to attend this meeting.  *Id.* Ex. 42.  The next day, on March 8, 2012, Mr. Enright e-mailed colleagues that "we have convinced the [NHSA] to abandon a planned private lease deal and do a COPs deal."  *Id.* Ex. 43.  On or about March 9, 2012, NW Capital Markets, an affiliate of NW Financial, retained the law firm Windels Marx Lane & Mittendorf, LLP to draft the lease documents for the deal, and Windels Marx circulated drafts about a week later on March 16, 2012.  *Id.* Exs. 44 and 45.

17. Mr. Geffrard recognized that the NHSA's conduct -- first rejecting Juster's COPs proposal and then proceeding to work on a COPs deal with NW Financial instead of Juster -- was not in good faith.  Epstein Decl. Ex. 29.

18. Juster was at all times ready, willing and able to perform.  Epstein Decl. Ex. 28 at 99:2-18, 120:2-122:9; Exs. 47-48.

19. On or about May 24, 2012, only six months into Juster's 18 month Exclusivity Period, the NHSA proceeded to close on a COPs transaction with NW Financial, restructuring and refinancing the same debt governed by the Exclusivity

6

Provision. *Id.* Ex. 3 at 30:13-23; Ex. 4 at 37:4-13, 46:7-10; Ex. 38 at 44:5-47:10; Ex. 10 at No. 5. Juster did not participate in the May 24, 2012 closing and did not receive any monies from that transaction. Ex. 10 at No. 5.

20. In providing its services to the NHSA, Juster incurred expenses of not less than $744,541.56. Epstein Cert. Ex. 31. The NHSA has not paid Juster for those expenses. *Id*. Ex. 10 at No. 25.

21. The Term Sheet further identified a Development Fee for Juster. Epstein Cert. Ex. 1 at p. 3. The underwriting documents provided by Juster to the NHSA identified the Development Fee as $6.5 Million. *Id.* Ex. 25 at JUSTER 00007623. The NHSA has not paid Juster any Development Fee. *Id.*

22. Under the terms of the proposed restructuring and refinancing with Juster that was set to close in or around January of 2012, Juster would have received monies from the lease payments to be made by the NHSA. Epstein Cert. Ex. 28 at 107:8-108:4. Because the NHSA restructured and refinanced without Juster, Juster has not received such payments. *Id.*

                                    Respectfully Submitted

                                    SILLS CUMMIS & GROSS P.C.
                                    *Attorneys for Plaintiff*
                                    *Juster Acquisition Co., LLC*

                                  By: <u>s/ Richard H. Epstein</u>
Dated: October 11, 2013                    RICHARD H. EPSTEIN